HALL v. SOUTH CAROLINA RAILWAY COMPANY.

1.  Where an objection to testimony is made and sustained after it has been given, but no motion made to strike it out, there is no ground for an exception by the party objecting.
2.  The charge in this case, considered as a whole, was not a charge on the facts, but only declared the law as applicable to facts hypothetically stated.
3.  It is not a rule of law that a passenger refusing to pay his railroad fare must be carried to the next regular station.   And therefore when a passenger tenders his fare, which is refused, and then demands that, if put off, he be put off at once and within walking distance of his home, but is instead carried to the next station and ejected, there may be circumstances of time, weather, &c., which would justify exemplary damages.   The question of exemplary damages in this case was properly left to the jury.

Before KERSHAW, J., Aiken, April, 1887.

In addition to the matters stated in the opinion of the court, it should be stated that the point referred to in the first exception was based upon the following extract from the testimony of the plaintiff on his direct examination:

Q. Have you ever ridden on the same train that passed at that hour?   A. Yes, sir; often.

Q. What did you pay?   A. Fifty-five cents.

Q. Have you ever had any trouble?   A. No, sir.   About ten days afterwards I went and offered the money just to try.   I offered him fifty-five cents and he took it and told him at the time that the conductor made me pay sixty-five cents.   He told me he had no right to do it.   I told him he put me off, and he said he had no right to do it.

[Defendants objected to what this other conductor told witness. Objection sustained, the court saying it was not in the discharge of his duty.]

Q. He took your money?  A. Yes, sir.

Q. You had no trouble whatever?  A. No, sir.

The charge of the judge to the jury, so far as it bears upon the exceptions, was as follows:

If the defendant had adopted the rates fixed by the railroad commission, or if the company had established a rate of fifty-five cents, it could not demand more than that to one not having a ticket unless opportunity was afforded of purchasing one. If an additional amount was demanded and charged because the plaintiff had not procured a ticket and no opportunity of obtaining the ticket was afforded him, such additional demand was improper, and the plaintiff was not bound to pay it, and to expel him was illegal, if it was done, and the plaintiff should be entitled to recover damages for such ejectment under those peculiar circumstances.

Now, if there was a rate established, an established ticket rate, then I charge you as follows, as requested by the plaintiff:

"The defendant had not the right to charge any greater rate than the ticket rate, unless they had furnished the plaintiff an opportunity to purchase the ticket before he entered the train."

If the ticket office was not open at Aiken before the departure of the train, so that the plaintiff could have purchased a ticket, he is not to be blamed for not having one, and was entitled to travel to Augusta at ticket rates, and if it was offered to the conductor, it was unlawful to eject him, and the plaintiff is entitled to such damages as he received. If he was not liable to be expelled from defendant's cars, and he was expelled at an unseasonable hour of the morning, where he was exposed to the weather, when he could have been ejected when a few yards from home, you may take these circumstances in consideration in making up your verdict, and may give exemplary damages. Plaintiff is entitled to recover damages for loss of time, injuries received, and injuries to his feelings, and for the amount of charges which he has sustained, if the jury find exemplary damages. They are to be such as they believe would compensate him only if exemplary damages are not allowed plaintiff.

The rule in regard to damages is that they should be such only as would compensate the plaintiff for such injuries as he had suffered, and if the expulsion was unlawful and the conductor's conduct was oppressive, malicious, and recklessly disregardful of the plaintiff's feelings, or insulting, or unnecessarily rude and violent, the jury may go beyond the actual amount of damages done the plaintiff and give such amount as they think he ought to have, not only to compensate him but to punish the defendant for such conduct; but the amount should not be oppressive, but fair and just to both parties according to the circumstances of the case, and no more. If the jury should render a verdict beyond what is reasonable and proper, the court has the authority to set aside that verdict. Take the record and find according to your convictions of what is right and proper under the instructions of the court and the evidence in the case.

*Messrs. Henderson Bros.*, for appellant.

*Mr. G. W. Croft*, contra.

March 20, 1888. The opinion of the court was delivered by

MR. JUSTICE MCIVER. The plaintiff brought this action for damages on the ground that the agent or servant of the defendant company had illegally ejected him from the defendant's railroad train. The facts of the case, as to which there is no dispute here, were substantially as follows: On October 16, 1883, the plaintiff boarded defendant's train at Aiken for the purpose of going to Augusta to meet the remains of his deceased mother. The train passed Aiken at a very early hour, before day-light, and although the plaintiff was at the depot in time to have purchased a ticket before the train arrived, he was unable to do so because the ticket office was not open, the regulations of the company not requiring it to be opened at so early an hour. When the plaintiff was asked for his ticket or fare by the conductor, he tendered him fifty-five cents, the price of a ticket from Aiken to Augusta, but the conductor demanded ten cents more upon the ground that he was required by the regulations of the company to charge a person who had no ticket sixty-five cents.

The plaintiff declined to pay the sum demanded, when the conductor told him that if he did not pay it, he would have to put him off. The plaintiff then said to the conductor, "Stop your train and put me off then." This the conductor declined to do, but carried plaintiff five miles further on to Graniteville, the next station, and when the train reached that station the conductor again approached plaintiff and asked if he must take him up and put him off, to which plaintiff replied no, "but he must lead me out, and he laid his hand on me and led me out." The morning was cold and wet, and the depot at Graniteville not being open at that early hour the plaintiff was left there without shelter. The plaintiff testified that the conductor's manner in refusing the amount offered and demanding more, with a threat to put him off if he did not pay the amount demanded, was abrupt; but when he was actually put off the train at Graniteville, no violence was used and no more force than was necessary to take plaintiff by the arm and lead him off the train. The plaintiff remained at Graniteville until a return train came which he took and reached Aiken about eight o'clock in the morning. The plaintiff also testified that when he first refused to pay the amount demanded, and asked the conductor to put him off then, the train had just left Aiken and reached a point between the landing of the Highland Park Hotel and the pump where the train sometimes stopped, not more than a mile from Aiken.

The jury found a verdict in favor of the plaintiff for three hundred and twenty-five dollars, and defendant appeals upon the several grounds set out in the record.

The first ground, which alleges error in the admission of certain testimony, is disposed of by the statement which appears in the "Case," that the objection to this testimony was not overruled, but was sustained, and the position taken in the argument, that the plaintiff had the full benefit of this testimony, cannot be sustained. So far as the "Case" shows, the objection to this testimony was sustained as soon as it was presented, and certainly this is all that could have been expected from the Circuit Judge, as it does not appear that he was asked to strike out such testimony, or to instruct the jury to disregard it, and refused to do so.

The second ground of appeal is as follows : "Because it is submitted that his honor erred in charging the jury that, in considering the question of exemplary damages, they must take into consideration, 'that he could have been ejected when a few yards from home,' in that said charge involved a question of fact and should have been submitted to the jury." It seems to us that .this ground is taken under a misconception of the charge. The language therein quoted from the charge, taken, as there stated, by itself and apart from the connection in which it was used, might possibly convey the idea that the Circuit Judge had stated, as a fact proved in the case, that the plaintiff could have been put off the train within a few yards of his home, and, if so, it .would undoubtedly be objectionable. But when we examine the charge, which is set out in the "Case," it is manifest that the Circuit Judge did not intend to state, and did not state, any fact as proved in the case, but simply stated to the jury what he had the unquestionable right to do, that *if* certain facts were established, they might take them into consideration in determining whether the plaintiff was entitled to exemplary damages.

This will appear from the language of the charge as to this point, which is as follows : "If he was not liable to be expelled from defendant's cars, and he was expelled at an unseasonable hour of the morning, where he was exposed to the weather, when he could have been ejected when a few yards from home, you may take these circumstances in consideration in making up your verdict and may give exemplary damages." It seems to us clear that the word "*if*" at the beginning of this sentence was applicable to each branch of it, and that the plain and obvious meaning of the language used by the Circuit Judge was that, *if* the circumstances there mentioned occurred, they were proper matters to be considered by the jury in determining whether exemplary damages should be allowed. As we have frequently had occasion to say, it will not do to take up detached sentences, or parts of sentences, from the charge of a Circuit Judge, but it must be considered as a whole, for that is the way it is delivered to the jury, and therefore the way in which they must be regarded as considering it; and if we consider this charge in that manner, we do not see how the jury could have supposed that the judge was

stating to them *any* fact as proved, but was simply telling them that *if* certain circumstances did occur, then they were proper for their consideration in determining the question of damages.

The third ground of appeal is as follows: "Because, it is submitted, that his honor erred in charging the jury that, in considering the question of exemplary damages, they could take into account that he was ejected at an unseasonable hour in the morning at Graniteville when he could have been ejected nearer home, in that said charge was calculated to mislead the jury and incline them to believe that a conductor must eject, not at the next regular station, but at a point nearest the station boarded by the passenger, which is contrary to law and prudence."

Here again, it seems to us, that there is a misconception of the charge, arising from looking at isolated portions, instead of considering the parts objected to in the connection in which they are used. The remark made as to the place where the defendant was actually ejected, and the place where he might have been put off the train, *and where the plaintiff asked the conductor to put him off*, was manifestly intended to indicate one of the circumstances which might be adverted to by the jury, as showing a reckless disregard, or at least a careless indifference, to the feelings and wishes of the plaintiff, and we do not see how it could have been regarded by the jury as any expression of the judge's view of the law as to where was the proper place to put the plaintiff off the train. He was not asked to instruct the jury that the conductor could not put off a passenger, who refused to pay the fare demanded, between stations, but was bound to wait until the next station was reached; and we are not prepared to admit that the law is as claimed in this exception.

We are not prepared to lay it down as a rule of law that where a passenger on a railroad train refuses to pay his fare, the conductor cannot eject him between stations, but is bound to take him on to the next regular station before he can be ejected. It seems to us that this would depend largely upon the circumstances of each particular case. For example, in this very case where the passenger finding that he was to be ejected desired to be put off at a point near his home, where the train might have been easily stopped, as was shown by the fact that the train had

been in the habit of stopping at that point, near the Highland Park Hotel landing, and the conductor refused to do so, but insisted on carrying him to the next station five miles further on, where, as the conductor must have had reason to know, and where the event proved, there was no shelter at that early hour of the morning to which the plaintiff could obtain access, the state of the weather being such as to render it necessary for plaintiff's comfort, we would not be willing to lay it down as a rule of law that the plaintiff could only be ejected at the next station.    On the contrary, we think, with the Circuit Judge, that these were circumstances proper to be considered by the jury in determining the question whether exemplary damages should be awarded.

The only remaining inquiry is that presented by the third sub-division of the fourth ground of appeal (the first and second having been abandoned), which imputes error to the Circuit Judge in refusing to charge: "That in no aspect of this case can the plaintiff recover more than *actual* damages; and if he suffered no actual damages, he can recover nothing at all." The Circuit Judge laid down the rule as to exemplary damages in terms to which no exception has been taken, and therefore, for the purposes of this case at least, it must be regarded as the correct rule.    Hence this request is based entirely upon the assumptions, 1st.    That there was no testimony whatever tending to show that the plaintiff was entitled to recover exemplary damages.    2d. That where such is the case the judge is bound to instruct the jury that they cannot give exemplary damages, but must confine themselves exclusively to the *actual* damages proved in the case. Inasmuch as the first assumption is, in our opinion, unwarranted, we need not consider the second.    As we have intimated above there were some circumstances in the case tending to show that it was a proper case for exemplary damages, and whether those circumstances were sufficient to produce such a conclusion was a matter for the jury exclusively.    See *Emory* v. *The Hazard Powder Company,* 22 *S. C.,* 484; *Epstein & Bro.* v. *Brown,* 21 *Id.,* 599.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.